UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Newport News Division)

| | |
|---|---|
| In re LUMBER LIQUIDATORS HOLDINGS, )<br>INC. SECURITIES LITIGATION )<br>———————————————————— )<br> )<br>This Document Relates To: )<br> )<br>Lead Case No. 4:15cv16 and Consolidated )<br>Case Nos. 4:15cv25 and 4:15cv30 )<br>———————————————————— ) | Master No. 4:13-cv-00157-AWA-DEM<br><br>Hon. Arenda L. Wright Allen |

MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

# TABLE OF CONTENTS

Page

I.     INTRODUCTION .................................................................................................1

II.    BRIEF OVERVIEW OF THE ACTIONS ...........................................................3

    A.    Commencement and Consolidation of the Federal Derivative Actions..................3

    B.    Defendants' Motions to Dismiss...........................................................................4

    C.    Settlement Negotiations .......................................................................................5

    D.    Approval of the Settlement by the Lumber Liquidators' Board ............................5

    E.    The Settlement Terms ..........................................................................................6

        1.    Board Composition and Practices.............................................................6

        2.    Regulatory Affairs Committee..................................................................9

        3.    Compensation Reforms...........................................................................10

        4.    Corporate Discipline, Termination and Whistleblowers .........................11

        5.    Policy on Lobbying and Political Contributions......................................14

III.   THE STANDARDS FOR PRELIMINARY APPROVAL OF A DERIVATIVE SETTLEMENT.....................................................................................................15

IV.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ...........16

V.     PROPOSED SCHEDULE OF EVENTS.............................................................20

VI.    CONCLUSION....................................................................................................22

# TABLE OF AUTHORITIES

Page

**CASES**

*City of Westland Police & Fire Ret. Sys. v. Stumpf, et al.,*
  No. 3:11-cv-02369-SI, slip op.
  (N.D. Cal. May 12, 2014) ...................................................................................................21

*Domonoske v. Bank of Am., N.A.,*
  No. 5:08cv066, 2010 U.S. Dist. LEXIS 7242
  (W.D. Va. Jan. 27, 2010) ...................................................................................................16

*Flinn v. FMC Corp.,*
  528 F.2d 1169 (4th Cir. 1975) ...............................................................................16, 18, 19

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983) ...........................................................................................................19

*In re Abbott-Depakote S'holder Derivative Litig.,*
  No. 1:11-cv-08114, slip op.
  (N.D. Ill. Mar. 18, 2014) ...................................................................................................21

*In re Am. Capital S'holder Derivative Litig.,*
  No. 11-2424 PJM, 2013 U.S. Dist. LEXIS 90973
  (D. Md. June 28, 2013) .................................................................................................15, 16

*In re Eclipsys Corp. Derivative Litig.,*
  No. 07-80611-CIV-MIDDLEBROOKS, slip op.
  (S.D. Fla. June 12, 2008) ...................................................................................................21

*In re F5 Networks, Inc. Derivative Litig.,*
  No. C-06-0794-RSL, slip op.
  (W.D. Wash. Oct. 21, 2010) ...............................................................................................21

*In re F5 Networks, Inc. Derivative Litig.,*
  No. C06-794 RSL, slip op.
  (W.D. Wash. Jan. 6, 2011) .................................................................................................20

*In re Family Dollar, Inc., S'holder Derivative Litig.,*
  No. 3:06-CV-00510(W), slip op.
  (W.D.N.C. Aug. 13, 2007) .................................................................................................19

*In re Finisar Corp. Derivative Litig.,*
  No. C-06-07660-RMW-HRL, slip op.
  (N.D. Cal. Oct. 28, 2013) .............................................................................................20, 21

1148449_6

**Page**

*In re First Am. Corp. S'holder Derivative Litig.*,
No. SACV-06-1230-JVS, slip op.
(C.D. Cal. Sept. 30, 2008)............................................................................................21

*In re Fossil, Inc. Derivative Litig.*,
No. 3:06-cv-01672-F, slip op.
(N.D. Tex. May 10, 2011)............................................................................................21

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)..........................................................................................15

*In re Google Inc. S'holder Derivative Litig.*,
No. CV-11-04248-PJH, slip op.
(N.D. Cal. Nov. 6, 2014).............................................................................................21

*In re Jiffy Lube Sec. Litig.*,
927 F.2d 155 (4th Cir. 1991) .......................................................................15, 16, 18, 19

*In re Lupron(R) Mktg. & Sales Practices Litig.*,
345 F. Supp. 2d 135 (D. Mass. 2004) .........................................................................17

*In re Marvell Tech. Grp. Ltd. Derivative Litig.*,
No. C-06-03894-RMW(RS), slip op.
(N.D. Cal. Aug. 11, 2009)...........................................................................................20

*In re Mid-Atl. Toyota Antitrust Litig.*,
564 F. Supp. 1379 (D. Md. 1983).................................................................................16

*In re MRV Comm'ns, Inc. Derivative Litig.*,
No. 1:08-cv-03800-GAF, slip op.
(C.D. Cal. Apr. 8, 2013)...............................................................................................21

*Ingram v. Coca-Cola Co.*,
200 F.R.D. 685 (N.D. Ga. 2001)..................................................................................20

*Mauro v. Mitchell Rubenstein & Assocs., P.C.*,
No. 3:11CV78-HEH, 2011 U.S. Dist. LEXIS 127173
(E.D. Va. Nov. 3, 2011)...............................................................................................15

*Wiener v. Roth*,
791 F.2d 661 (8th Cir. 1986) .......................................................................................15

*Zapata Corp. v. Maldonado*,
430 A.2d 779 (Del. 1981).............................................................................................17

- iii -

1148449_6

**Page**

*Zimmerman v. Bell,*
   800 F.2d 386 (4th Cir. 1986) .......................................................................15, 19

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78n(a) ..........................................................................................................9
   §7243 ...........................................................................................................10

15 U.S.C.
   Rule 16a-1(f) ................................................................................................10

Federal Rules of Civil Procedure
   Rule 23.1 .....................................................................................................15
   Rule 23.1(c) ..............................................................................................1, 15
   Rule 23(e) ................................................................................................15, 17

17 C.F.R.
   §240.14a-8 .....................................................................................................9

**SECONDARY AUTHORITIES**

*Manual for Complex Litigation* (3d ed. 1995)
   §30.41 ..........................................................................................................17

*Manual for Complex Litigation* (4th ed. 2004)
   §21.632 .........................................................................................................16

7C Wright, Miller & Kane, Federal Practice & Procedure (3d ed. 2016)
   §1839............................................................................................................15

1148449_6

Pursuant to Rule 23.1(c) of the Federal Rules of Civil Procedure, Lead Plaintiff Amalgamated Bank, as Trustee for the Longview 600 Small Cap Index Fund ("Amalgamated Bank") and Plaintiffs R. Andre Klein and Phuc Doan (together with Amalgamated Bank, "Plaintiffs") (on behalf of themselves and derivatively on behalf of Lumber Liquidators Holdings, Inc. ("Lumber Liquidators" or the "Company")) respectfully submit this Memorandum of Law in Support of Preliminary Approval of Derivative Settlement.[1]

## I.      INTRODUCTION

This Memorandum is submitted in support of preliminary approval of the settlement of the derivative claims brought on behalf of Nominal Defendant Lumber Liquidators against certain of its current and/or former directors and executives.[2]  The terms of the settlement are set forth in the Stipulation of Settlement, dated July 18, 2016 ("Stipulation" or "Settlement"), submitted herewith.[3] The Settlement resolves all claims pending in the Actions.  The Settlement is the result of extensive arm's-length negotiations between the Settling Parties, which were conducted with the substantial assistance of retired Judge Daniel Weinstein.[4]  Plaintiffs respectfully submit that the terms of the Settlement are unquestionably fair, reasonable, adequate, and deserve preliminary approval by this Court.

---

[1]   Plaintiffs, respectively, filed the following actions in this Court: *Amalgamated Bank v. Brock, et al.*, Civil Action No. 4:15-cv-30, *Klein v. Brock, et al.*, Civil Action No. 4:15-cv-16, and *Doan v. Brock, et al.*, Civil Action No. 4:15-cv-25 (the "Actions").  The derivative actions were consolidated, and Amalgamated Bank designated as Lead Plaintiff, by the Court on May 27, 2015.

[2]   "Settling Defendants" means Thomas D. Sullivan, Douglas T. Moore, John M. Presley, Macon F. Brock, Jr., Peter B. Robinson, Martin F. Roper, Jimmie L. Wade, Nancy M. Taylor, Daniel E. Terrell, Carl R. Daniels, Robert M. Lynch, Jeffrey W. Griffiths and William K. Schlegel. "Settling Parties" means, collectively, each of the Plaintiffs, the Settling Defendants and Lumber Liquidators.

[3]   All capitalized terms used herein shall have the same meanings as set forth in the Stipulation.

[4]   Judge Weinstein is a retired Judge of the Superior Court of San Francisco California with extensive experience in mediating complex securities fraud, class action, and shareholder derivative disputes.  In addition to Judge Weinstein, Jed Melnick, Esq., Judge Weinstein's colleague who also has significant experience mediating complex shareholder disputes such as the Actions, also assisted with the Settling Parties' mediation efforts.  www.jamsadr.com/Melnick.

The Settlement confers substantial benefits to Lumber Liquidators, on whose behalf the Actions were brought. First, the Settlement provides for the payment of $26,000,000 (the "Cash") to Lumber Liquidators, subject to the release by the Court of that amount of funds as a result of an interpleader action to be brought by the Company's Insurers. *See* Stipulation, ¶2.1.

Second, 60 days following final approval of the Settlement, Lumber Liquidators shall adopt and maintain certain comprehensive corporate governance reforms for a period of no less than five (5) years (the "Corporate Governance Reforms"). *See id.,* ¶¶2.4, 3. These significant Corporate Governance Reforms are designed to enhance the Lumber Liquidators' Board of Directors' ("Board") monitoring of, response to, and compliance with, environmental and health and safety laws, rules, and regulations, as well as addressing stockholder concerns relating to the Company's compliance with such laws, rules, and regulations. *See id.,* ¶3. These Corporate Governance Reforms will provide a strong foundation for the Company as it moves forward implementing "best practices" to assure its stockholders, customers, vendors, and suppliers that its flooring products use only sustainably harvested wood and are not contaminated with harmful chemicals. Plaintiffs' prosecution and settlement of the Actions were material factors in the Company's decision to use the $26,000,000 in insurance proceeds (and no money from the Company) for the resolution of the Federal Class Action and the adoption of the Corporate Governance Reforms and both provide substantial benefits upon Lumber Liquidators. *Id.,* ¶2.5.

After negotiating the material terms of the Settlement, including the Cash and the Corporate Governance Reforms, counsel for Lead Plaintiff and Lumber Liquidators, acting by and through its independent counsel, with the assistance of Judge Weinstein, negotiated the amount of attorneys' fees and expenses to be paid to Plaintiffs' Counsel, based upon the substantial benefits conferred upon Lumber Liquidators. As a result of those negotiations, Lumber Liquidators has agreed to pay Plaintiffs' Counsel $5 million in recognition of the substantial benefits conferred upon the Company as a result of the settlement of the Actions. *See id.,* ¶6.1. The Company's full Board, advised by the Demand Review Committee's independent counsel, has approved the negotiated amount of attorneys' fees and expenses.

In sum, the Settlement is an excellent resolution for Lumber Liquidators of a case involving substantial complexity and costs. Accordingly, Plaintiffs respectfully request the Court enter the [Proposed] Order Preliminarily Approving Derivative Settlement and Providing for Notice ("Notice Order"), which: (a) grants preliminary approval of the Settlement, (b) directs that notice be given to Lumber Liquidators stockholders, and (c) schedules a hearing at which the Court will consider final approval of the Settlement, including the separately negotiated amount of Plaintiffs' Counsel's attorneys' fees and expenses.[5]

In determining whether preliminary approval is warranted, the issue before the Court is whether the proposed Settlement is within the range of what might be found to be fair, reasonable, and adequate, such that notice of the proposed Settlement should be provided to Lumber Liquidators stockholders and that a hearing be scheduled for final settlement approval. As discussed below, the Settlement meets this standard and, therefore, the Court should enter the Notice Order.

## II.    BRIEF OVERVIEW OF THE ACTIONS

### A.    Commencement and Consolidation of the Federal Derivative Actions

On March 11, 2015, plaintiffs Amalgamated Bank, Doan and Klein filed shareholder derivative actions on behalf of Lumber Liquidators for breach of fiduciary duty, corporate waste, unjust enrichment and other relief in the United States District Court for the Eastern District of Virginia. On May 27, 2015, the District Court consolidated these actions into the *In re Lumber Liquidators Holdings, Inc. Shareholder Derivative Litigation*, Civil Action No. 4:13-cv-00157-AWA-LRL and appointed Amalgamated Bank as Lead Plaintiff and Robbins Geller Rudman & Dowd LLP as Lead Counsel for the Federal Derivative Actions. *See* Dkt. No. 11.

On June 26, 2015, plaintiffs filed a Consolidated Shareholder Derivative Complaint for Breach of Fiduciary Duty of Loyalty, Corporate Waste, Unjust Enrichment and Conspiracy ("Consolidated Complaint"). *See* Dkt. No. 24. The Consolidated Complaint alleges that defendants are liable to Lumber Liquidators for causing the Company to violate the law by selling wood

---

[5]    The Notice Order is being submitted concurrently herewith and is also attached as Exhibit A to the Stipulation.

- 3 -

containing toxic levels of formaldehyde in violation of California Air Resources Board's Regulations ("CARB Regulations"), and wood sourced from the Russian Far East, a protected habitat, in violation of the Lacey Act. *Id.*, ¶¶64-121. The Consolidated Complaint further alleges that a pre-suit demand upon the Lumber Liquidators' Board is unnecessary because a majority of the directors face a substantial likelihood of liability for knowingly causing the Company to seek profits in violation of the law as described above. *Id.*, ¶¶148-187.

## B.  Defendants' Motions to Dismiss

On July 24, 2015, the Company filed a motion to dismiss the Consolidated Complaint on the grounds that a pre-suit demand upon the Lumber Liquidators' Board would not have been a useless and futile act, and therefore, is not excused. *See* Dkt. No. 45. Defendants also filed a motion to dismiss the Consolidated Complaint, arguing, among other things, that defendants did not breach their fiduciary duties owed to Lumber Liquidators and its shareholders but instead acted in good faith and in the best interest of Lumber Liquidators. Dkt. No. 42.

On the same day, the Demand Review Committee filed a separate motion to stay the Federal Derivative Actions until such time the Demand Review Committee was able to "complete its work and the Board may act on the [Demand Review] Committee's recommendation." *See* Dkt. No. 37.

Plaintiffs filed their Oppositions to the Company and defendants' motions to dismiss the Consolidated Complaint on August 14, 2015. *See* Dkt. Nos. 69, 71. In the Oppositions, plaintiffs argued, among other things, that demand futility existed because a majority of the Lumber Liquidators' Board suffer from conflicts that render them unable to fairly and objectively consider a pre-suit demand. *Id.* The Oppositions argued that each defendant is liable to Lumber Liquidators for breach of fiduciary duty of loyalty, corporate waste, unjust enrichment, and conspiracy. *Id.*

On December 21, 2015, the District Court entered an Order in the related *In re Lumber Liquidators Holdings, Inc. Securities Litigation*, Civil Action No. 4:13-cv-157 denying the motion to dismiss filed by defendants in that action.

Thereafter, on February 29, 2016, the District Court denied the Company and defendants' motions to dismiss the derivative claims in the Actions without prejudice. *See* Dkt. No. 155 at 4.

- 4 -

## C.    Settlement Negotiations

On March 29, 2016, the parties engaged in mediation, overseen by the Hon. Daniel Weinstein (Ret.).  The mediation involved the parties' extended effort to settle the claims through extensive negotiations and consultation with experienced legal counsel who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.  The parties exchanged substantial mediation statements prior to participating in the mediation session with Judge Weinstein.  Following lengthy, arm's-length, and mediated negotiations, on May 16, 2016, the parties reached an agreement-in-principle to settle the Actions that was memorialized in a Memorandum of Understanding (the "MOU") executed that day.

## D.    Approval of the Settlement by the Lumber Liquidators' Board

On April 27, 2016, the Demand Review Committee of the Board of Directors of the Company, assisted by independent counsel, reviewed the Federal Derivative Actions, the State Derivative Actions, and the claims of the Demanding Stockholder and determined that pursuit of any of these claims was not in the best interests of the Company and its stockholders.  On April 28, 2016, the Demand Review Committee of the Board of Directors of the Company, through its independent counsel, recommended that the full Board reach the same conclusion.  On May 6, 2016, the full Board, advised by the Demand Review Committee's independent counsel, reviewed the report of the Demand Review Committee, and exercising its business judgment and mindful of its duties to stockholders, adopted the report of the Demand Review Committee.  The full Board also reviewed the derivative settlement parameters, and exercising its business judgment and mindful of its duties to stockholders, approved the settlement.  The full Board further resolved that the President and Chief Executive Officer, Chief Compliance and Legal Officer and any Senior Vice President of the Company were authorized and directed, in the name and on behalf of the Company, to negotiate and execute and deliver, or caused to be executed and delivered, any and all documents, agreements, certificates and instruments that may be necessary to or in furtherance of a settlement or final resolution of the Derivative Actions within the settlement parameters presented to the Board, and resolved that any such documents, agreements, certificates and instruments should be provided to the

1148449_6

Chair of the Board prior to execution and delivery thereof. On July 11, 2016, Jill Witter, Chief Compliance and Legal officer of the Company, confirmed that the Settlement set forth by the Stipulation is within the derivative settlement parameters approved by the Board. Before the Stipulation was executed or delivered, Nancy M. Taylor, Chair of the Board, received a copy of the Stipulation.

### E.    The Settlement Terms

The terms of the Settlement require the payment of $26,000,000 to the Company by its Insurers, subject to the Interpleader Action. *See* Stipulation, ¶2.1. As part of the Settlement of the Federal Derivative Actions, Settling Defendants agreed that in no event shall any of Lumber Liquidators' cash (beyond the net insurance proceeds Lumber Liquidators receives from its Insurers) be paid to resolve the Federal Class Action. *See id.* Additionally, within 60 days of final approval of the Settlement, the Board shall adopt and amend committee Charters and/or Bylaws to ensure adherence to the following Corporate Governance Reforms, which shall remain in effect for no less than five (5) years:

### 1.    Board Composition and Practices

Modified Plurality Voting. The Company will adopt a "modified plurality" approach to shareholder voting for directors. Under this approach, a director who does not receive a majority vote would agree to submit his/her resignation. However, the Board is not legally obligated to accept, and can take other factors into consideration, including (but not limited to) the individual's history on the Board, relevant outside work experience, knowledge of industry, and knowledge of regulatory requirements, and choose to retain the director if the director otherwise received the highest number of shares voted.

Separate Chairman and Chief Executive Officer ("CEO"). The Board shall include a provision in the Company's Bylaws which requires the separation of the roles of CEO and Chairman of the Board and that the Chairman must be a fully independent director of the Board.

In addition to the duties of all Board members (which shall not be limited or diminished by the Chairman's role), the Chairman shall be responsible for the following functions: (i) timing and

agendas for Board meetings; (ii) nature, quantity and timing of information provided to the independent directors by the Company's management; (iii) retention of counsel or consultants who report directly to the Board; (iv) implementation of corporate governance policies and procedures, including assisting the chair of the various Board committees as requested; (v) receiving reports from the Nominating and Corporate Governance Committee regarding compliance with and implementation of corporate governance policies; (vi) receiving reports from the Nominating and Corporate Governance Committee regarding governance policies; and (vii) evaluating, along with the Compensation Committee, CEO performance. The Chairman should share any reports received by Board committees with the full Board as appropriate.

Limitation on Other Boards. The Board shall include a provision in the Company's Bylaws which requires that independent directors may sit on no more than *two* other public boards, including Chairman. The CEO may sit on no more than *one* other public board. Directors and officers may not serve as Board members for companies that directly compete with Lumber Liquidators.

Authorization to Retain Counsel. The Board's committees shall have standing authorizations, at their discretion, to obtain legal or other advisors of their choice, who shall report directly to the Board or the committee.

Charters. Each standing committee of the Board should have a written charter, which is made available to the public on Lumber Liquidators' website, and requires that the committee meet no fewer than three times per year.

Director Education. Current directors shall attend a program specifically designed as directors' education no later than the end of their current term (if standing for reelection). New directors must attend within six (6) months of joining the Board. Thereafter, the Nominating and Corporate Governance Committee in coordination with the Chief Compliance Officer and Chief Legal Officer will develop and implement an ongoing annual education program for directors.

New Director. The Company shall agree to the one-time appointment to the Board of Directors of a candidate agreeable to Lead Plaintiff and the Company. The candidate shall meet the criteria for a Lumber Liquidators' director as set forth in the Company's Corporate Governance

- 7 -

Guidelines.  If at least one of the candidate(s) already proffered by Lead Plaintiff are not agreed to by Lumber Liquidators or, should all candidates decline to serve, the Company, utilizing mutually agreed upon search criteria, shall in good faith conduct a search for new director candidate(s) through the following process:

      1.      Employ a nationally recognized search firm to work together with Lead Plaintiff's corporate governance expert to engage in a general search for a slate of at least five (5) candidates. Lead Plaintiff, in consultation with its corporate governance expert and Lumber Liquidators' shareholders, as appropriate, shall propose a slate of at least five (5) additional candidates.  All candidates selected shall meet the qualifications identified by Lead Plaintiff's corporate governance expert and Lumber Liquidators.

      2.      If Lead Plaintiff and Lumber Liquidators are unable to, in good faith, mutually agree upon the selection of one of these candidates, the selection shall be made by Judge Weinstein or Jed Melnick as the mediators of the settlement of the Federal Derivative Actions.

      3.      At the conclusion of the search process, but in no event later than six (6) months after final approval of this Settlement, Lumber Liquidators shall, in good faith, appoint a director candidate to the Lumber Liquidators' Board identified pursuant to this process to serve for at least one (1) term.

      Board Evaluation of Stockholder Proposals.  The Board shall include a provision in the Company's Bylaws which requires that stockholder proposals be evaluated by the directors as follows:

      (a)      The Company shall distribute to the entire Board all proposals received by the Company.  After the distribution to the Board, and before the making of any recommendation to the Board or any of its members concerning a response, approval or disapproval, Lumber Liquidators' law department and senior management shall discuss with the Chair of any Board committee responsible for oversight of the subject matter of the proposal, if applicable, the financial, legal, practical and social implications of approval and implementation of the proposal;

(b)     Where a stockholder proposal has been made by any stockholder holding at least 2% of the Company's outstanding shares as of the Company's last-filed Form 10-Q or 10-K, the Company shall timely contact the proponent of the proposal to arrange a teleconference or an in-person meeting to discuss the proposal and its financial, legal, social and practical implications.  If the proponent agrees to a meeting or teleconference, the Chair of any Board committee responsible for the oversight of the subject matter of the proposal shall attend;

(c)     Lumber Liquidators' law department and senior management, shall make a recommendation to the Board committee responsible for oversight of the subject matter of the proposal concerning whether to include or exclude the shareholder proposal in the proxy and/or to submit a no-action request to the SEC pursuant to Securities Exchange Act of 1934 §14(a), and SEC Rule 14a-8, promulgated thereunder;

(d)     Before the filing of a proxy statement, which makes a recommendation concerning any stockholder proposal, a draft of the recommendation shall be reviewed and approved by the Board; and

(e)     The Board is authorized at its discretion to engage outside counsel or other advisors to assist in their review of any shareholder proposal at the expense of the Company.

Stockholder Meetings.  Each member of the Board shall be expected to attend each annual stockholder meeting in person.

Stockholders shall have the right in general meetings to ask questions, both orally and in writing and receive answers and discussion from the CEO and Board.  Such discussion shall take place regardless of whether questions have been submitted in advance.

Polls should remain open at the annual meeting until all agenda items have been discussed.

## 2.     Regulatory Affairs Committee

The Board shall establish a Regulatory Affairs Committee focused on overseeing the regulatory affairs specific to Lumber Liquidators.  The Committee shall familiarize itself with all aspects of the applicable industry law.

The Regulatory Affairs Committee shall oversee the processes by which Lumber Liquidators conducts its business so that the Company shall do so in a manner that complies with laws and regulations and reflects the highest standards of integrity. The Committee shall review and make recommendations regarding policies, practices, and procedures for compliance with industry laws.

The Regulatory Affairs Committee shall review Company policy for contracts with contractors, suppliers, vendors and similarly situated persons and the financial arrangements provided to ensure that such persons are not incentivized in a way that would cause Lumber Liquidators to violate any applicable environmental laws, rules and/or regulations. The Board will have the authority to grant additional authority/oversight to this Committee.

### 3.    Compensation Reforms

Ban on Stock Pledges. The Board shall establish a ban on stock hedging and/or pledging prohibiting a director from hedging and/or pledging any of the equity securities in connection with a margin or similar loan transaction.

Clawback Policy. To the extent permitted by law, if the Board, or a Committee thereof, determines that any bonus, incentive payment, equity award or other compensation has been awarded or received by an executive officer of the Company, as defined by Rule 16a-1(f) of the Securities Exchange Act of 1934, as amended, and that such compensation was based on any financial results or operating metrics that were satisfied as a result of such officer's knowing or intentional fraudulent or illegal conduct, then the Board or a Committee thereof shall recover from the officer such compensation (in whole or in part) as it deems appropriate under the circumstances. Further, following a restatement of the Company's financial statements, the Company shall recover any compensation received by the CEO and CFO that is required to be recovered by Section 304 of Sarbanes-Oxley Act of 2002. In determining whether to recover a payment, the Board shall take into account such considerations as it deems appropriate, including whether the assertion of a claim may violate applicable law or prejudice the interests of the Company in any related proceeding or investigation. The Board shall have sole discretion in determining whether an officer's conduct has or has not met any particular standard of conduct under law or Company policy.

<u>Stock Holdings Guidelines</u>.   The Board shall adopt a policy regarding stock holding guidelines for certain executives and directors with the following provisions:

1.     Company personnel will be required to maintain the following minimum stock holdings: (a) CEO – 5 times base salary, (b) Founder – 2.5 times base salary, (c) Non-employee directors – 2.5 times annual cash retainer, and (d) Executive officers – 1 times base salary.

2.     Shares can be owned directly or indirectly through immediate family members in the same household or a trust.   The shares can include vested shares of restricted stock, shares underlying in-the-money options, or shares held in the outside director deferral plan.

3.     The time period for implementing compliance is 5 years after adoption of policy or assuming a relevant position.

4.     Once the required level is reached, the individual must continuously own the shares. If the individual falls below the required holdings solely due to a decline in the value of the shares, then they may be granted a hardship exemption at the discretion of the Board.

5.     The Board shall disclose in its annual Proxy statement filed with the SEC when an individual falls out of compliance with the stock holding provision and when those individuals regain compliance with these provisions.

### 4.    Corporate Discipline, Termination and Whistleblowers

<u>Chief Compliance Officer</u>.   The Chief Compliance Officer shall be responsible for promoting Lumber Liquidators' worldwide compliance with applicable laws and rules and with Lumber Liquidators' Code of Business Conduct and Ethics.   The Chief Compliance Officer shall be responsible for overseeing development of a comprehensive legal compliance and ethics program designed to evaluate, to maintain and, when needed, to correct compliance with federal and state rules and regulations and the Code of Conduct. The Chief Compliance Officer shall be responsible for reviewing and suggesting improvements to Lumber Liquidators' existing procedures for receipt, retention and consideration of reports or evidence of violations of applicable federal or state law or the Code of Business Conduct and Ethics, in consultation with the Audit Committee.

1148449_6

Except as would be deemed the responsibility of the internal audit function, the Chief Compliance Officer shall be responsible for internal investigations into violations of Lumber Liquidators' policies or applicable laws. When a violation of federal or state law or the Code of Business Conduct and Ethics appears to have occurred, the Chief Compliance Officer shall be responsible for determining whether an investigation is necessary.

The Chief Compliance Officer shall notify the Audit Committee of all material investigations that have been initiated and shall retain such assistance as he/she deems necessary to conduct the investigation.

At the conclusion of any investigation, the Chief Compliance Officer (in consultation with the Audit Committee) shall:

        (a)     Determine whether a violation has occurred, is ongoing or is about to occur;

        (b)     Recommend (as necessary) that Lumber Liquidators implement appropriate responses to any violation; and

        (c)     Inform the Audit Committee of the results of any such material investigation and any recommended remedial measures.

The Chief Compliance Officer will make quarterly reports to the Audit Committee (or other committee as directed by the Board) and annual reports to the full Board.

The Chief Compliance Officer shall be responsible for reviewing every situation in which a Lumber Liquidators' employee is adjudicated by a court of law to have violated a U.S. federal or state statute in connection with his/her employment by Lumber Liquidators. Presumptively, any employee adjudicated to have violated a U.S. federal or state criminal statute in connection with his/her employment by Lumber Liquidators shall be terminated for cause and receive no severance payments in connection with the termination. If the Chief Compliance Officer determines that such termination is not warranted, he/she shall so recommend to the Audit Committee, which will act upon his/her recommendation in its discretion.

Code of Conduct. The Board shall cause the following clause to be inserted into the Company's Code of Business Conduct and Ethics:

You are expected to be familiar with all legal and regulatory provisions that relate to the performance of your job, and you must follow the spirit as well as the letter of such laws and regulations in your business dealings. No officer, employee and/or director of Lumber Liquidators has any authority to engage in conduct inconsistent with applicable U.S. laws and regulations, or to authorize, direct or condone such conduct by any other person.

The Audit Committee shall, within the next 3 years, review the current version of the Code of Business Conduct and Ethics and shall consider amendments thereto that provide recipients with more detailed discussions of those laws and regulations that have a material effect on Lumber Liquidators' business and operations.

Confidential Whistleblower Program. The Board shall require management to adopt written policies protecting whistleblowers, and include such policy on the Company's website. The Company's Whistleblower Policy shall:

(a)     Encourage interested parties to bring forward ethical and legal violations and/or a reasonable belief that ethical and legal violations have occurred to the Audit Committee and the Chief Compliance Officer so that action may be taken to resolve the problem. Material complaints shall be reviewed by the Audit Committee.

(b)     The policy shall communicate effectively that Lumber Liquidators is serious about adherence to its codes of conduct and that whistleblowing is an important tool in achieving this goal.

The Whistleblower Program – with the endorsement of the Board and the most senior management of the Company – must adequately notify employees, independent contractors and vendors of Lumber Liquidators of the following:

(a)     executives may be subject to criminal penalties, including imprisonment, for retaliation against whistleblowers;

(b)     whistleblower complaints may be directed to both the Audit Committee and the Chief Compliance Officer, and the complaints will be handled by these

- 13 -

1148449_6

parties anonymously and, to the extent possible, in confidence, unless requested by the whistleblower;

(c)     if a whistleblower brings his or her complaint to an outside regulator or other governmental entity, he or she will be protected by the terms of the Whistleblower Program just as if he or she directed the complaint to the Audit Committee and/or the Chief Compliance Officer;

(d)     if an employee is subject to an adverse employment decision as a result of whistleblowing, the employee must file a complaint with the Department of Labor within 90 days of the alleged violation (a failure to report such claims within the 90 day window does not foreclose any other available legal remedy);

and

(e)     it is both illegal and against Lumber Liquidators' policy to discharge, demote, suspend, threaten, intimidate, harass or in any manner discriminate against an individual for engaging in the act of whistleblowing.

The Company shall provide a Whistleblower Telephone Hotline to assist on matters pertaining to corruption, fraud or similar unlawful activities at Lumber Liquidators, with alternative reporting mechanisms including suggestion boxes or an email address.

The Company will remind employees of whistleblowing options and whistleblower protections in employee communications provided at least twice a year on the Company's intranet.

## 5.    Policy on Lobbying and Political Contributions

The Board shall include a provision in the Company's Bylaws which limits the use of corporate funds and other assets for governmental lobbying and political campaigns as follows:

The Board shall insure that any Company lobbying or political activity is conducted solely for promoting the commercial interests of Lumber Liquidators as a whole and is in the interests of its stockholders.  The Board shall insure that lobbying and political spending do not reflect narrow

political preferences of the Company's executives that have little or no bearing on Lumber Liquidators' own commercial performance.

## III.   THE STANDARDS FOR PRELIMINARY APPROVAL OF A DERIVATIVE SETTLEMENT

There is a strong policy favoring compromises that resolve litigation, "particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). The "'[s]ettlements of shareholder derivative actions are particularly favored because such litigation is "notoriously difficult and unpredictable."'" *Zimmerman v. Bell*, 800 F.2d 386, 392 (4th Cir. 1986) (citations omitted).

Federal Rule of Civil Procedure 23.1 governs a district court's analysis of the fairness of a settlement of a stockholder derivative action. *Wiener v. Roth*, 791 F.2d 661 (8th Cir. 1986).  Under Rule 23.1, a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval.  Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c); *Mauro v. Mitchell Rubenstein & Assocs., P.C.*, No. 3:11CV78-HEH, 2011 U.S. Dist. LEXIS 127173, at *12 (E.D. Va. Nov. 3, 2011).

"Approval of a derivative settlement is appropriate 'if it fairly and adequately serves the interests of the corporation' on whose behalf it was brought." *Zimmerman*, 800 F.2d at 391 (citation omitted).[6]  A proposed settlement is "fair" if it "was reached as a result of good-faith bargaining at arm's length, without collusion." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). The court may also consider: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel." *Mauro*, 2011 U.S. Dist. LEXIS 127173, at *12-*13; *see also In*

---

[6]   Procedures applicable to the settlement of a class action under Rule 23(e) must also be applied when a court is asked to approve the settlement of a derivative action under Rule 23.1.  *See* 7C Wright, Miller & Kane, Federal Practice & Procedure §1839 (3d ed. 2016).

*re Am. Capital S'holder Derivative Litig.*, No. 11-2424 PJM, 2013 U.S. Dist. LEXIS 90973, at *9

(D. Md. June 28, 2013).

Additionally, to determine whether a derivative settlement "adequately" serves the interests of the corporation, courts look at a number of factors, including: "'the relative strength of the plaintiffs' case on the merits' . . .; weaknesses in the plaintiffs' case . . .; the cost of additional litigation; defendants' ability to pay a judgment; and any opposition to the settlement." *Id.* at *10 (citations omitted); *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983); *see also Jiffy Lube*, 927 F.2d at 159. In sum, the "'fairness' prong is concerned with the procedural propriety of the proposed settlement, while the 'adequacy' prong focuses on the agreements substantive propriety." *Am. Capital*, 2013 U.S. Dist. LEXIS 90973, at *9.

Further, the trial court should not "turn the settlement hearing 'into a trial or a rehearsal of the trial' nor need it 'reach any dispositive conclusions on the admittedly unsettled legal issues' in the case." *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172-73 (4th Cir. 1975) (citation omitted).

## IV.     THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

At the Settlement Hearing, the Court will have before it detailed papers submitted in support of the Settlement and will be asked to make a determination as to whether the Settlement is fair, reasonable, and adequate. While the Settling Parties believe that the Settlement merits this Court's final approval, at this time they respectfully request only that the Court grant preliminary approval of the Settlement. Indeed, the standards for preliminary approval are "not as stringent as those" for final approval. *Manual for Complex Litigation* §21.632 (4th ed. 2004). To grant preliminary approval, a court need only make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement. *Domonoske v. Bank of Am., N.A.*, No. 5:08cv066, 2010 U.S. Dist. LEXIS 7242, at *48 (W.D. Va. Jan. 27, 2010). Put differently, the court's inquiry is "whether there has been a basic showing that the [p]roposed [s]ettlement [a]greement 'is sufficiently within the range of reasonableness so that notice . . . should be given.'" *Am. Capital*, 2013 U.S. Dist. LEXIS

90973, at *8 (quoting *In re Lupron(R) Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 139 (D. Mass. 2004)).[7]

Here, Plaintiffs believe the Settlement to be well "within the range of reasonableness." As a threshold matter, the Settlement was reached after extensive arm's-length negotiations between and among counsel for the Plaintiffs, Lumber Liquidators, and the Settling Defendants with the considerable assistance of Judge Weinstein. As a result of those negotiations, Plaintiffs obtained a Settlement that provides substantial benefits to the Company while eliminating the expense, risk, and delay inherent in such complex litigation. Moreover, the Lumber Liquidators' Board, exercising its business judgment, approved the Settlement, concluding that the settlement of the Actions is in the best interest of the Company, and confers substantial benefits to Lumber Liquidators. *See* Stipulation at §IV (The full Board also reviewed the derivative settlement parameters, and exercising its business judgment and mindful of its duties to stockholders, approved the Settlement.).[8] Under these circumstances, Plaintiffs respectfully submit that the Settlement is "within the range of reasonableness" and should be preliminarily approved.

Plaintiffs respectfully submit that the Settlement is an excellent result. In connection with the settlement of the Actions, $26,000,000[9] will be provided to Lumber Liquidators for the settlement of the related securities class action, and no Company funds with be used to settle the related securities

---

[7]  As the *Manual for Complex Litigation* explains:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual for Complex Litigation* §30.41, at 237 (3d ed. 1995).

[8]  In the absence of a disabling conflict of interest and/or good faith, the exercise of business judgment by directors is traditionally afforded significant deference by the court. *See Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del. 1981).

[9]  Subject to the Interpleader Action. *See* Stipulation, ¶4.5.

class action. *See* Stipulation, ¶2.1. This is in addition to the numerous and extensive Corporate Governance Reforms designed to prevent future problems related to the Company's operations, sourcing, and health and safety compliance. *See id.*, ¶3. As Lumber Liquidators acknowledges, the Actions were a material factor in obtaining the substantial benefits conferred by the Settlement. *See id.*, ¶2.5.

Further, reference to some of the factors considered by courts in granting final approval of derivative and class action settlements lends support to Plaintiffs' belief that the Settlement should not only be preliminarily approved, *i.e.*, is within the range of reasonableness to warrant preliminary approval, but also final approval after notice to Lumber Liquidators stockholders. As noted herein, in determining whether a settlement is fair, courts focus on whether the settlement was reached as a result of good faith bargaining at arm's length without collusion. *See Jiffy Lube*, 927 F.2d at 159. As discussed above, each element of the Settlement was extensively negotiated between experienced counsel with a firm understanding of the strengths and weaknesses of the claims and defenses asserted, is the product of significant give and take by the Settling Parties, and was reached only after extensive negotiations between counsel for the Plaintiffs, Lumber Liquidators and the Settling Defendants, with the substantial assistance of Judge Weinstein.

An evaluation of the benefits of settlement – which avoid spending any of the Company's limited cash to resolve the Federal Class Action while uniquely addressing the sourcing and compliance problems that plagued the Company, and providing a strong "best practices" foundation to build upon– must also be tempered by recognition that any compromise involves concessions on the part of most of the settling parties. Indeed, "'the very purpose of compromise'" is to "'avoid a determination of the sharply contested issues and to dispense with expensive and wasteful litigation.'" *Flinn*, 528 F.2d at 1172-73 (citation omitted).

Although the Plaintiffs believe that the claims asserted in the Actions were meritorious, liability was by no means a foregone conclusion. Had Plaintiffs continued to litigate, there was a risk that they would not have been successful with respect to Lumber Liquidators' anticipated renewed pre-trial motions designed to eliminate or curtail their claims. And, even if Plaintiffs were

successful, continued litigation would be extremely complex, costly, and of substantial duration. Document discovery would need to be completed, depositions would need to be taken, experts would need to be designated, and expert discovery conducted. Further, it is anticipated that the Defendants would bring motions for summary judgment that would have to be briefed and argued and that a trial may ultimately need to be held. Indeed, significant risks remained in getting past the Defendants' anticipated motions for summary judgment and obtaining a favorable judgment after trial. Even if liability was established, the amount of recoverable damages would still have posed significant issues and would have been subject to further litigation. The Settlement eliminates these and other risks of continued litigation. *See Zimmerman*, 800 F.2d at 392.

Significant weight also should be attributed to the belief of experienced counsel that settlement is in the best interest of those affected by the settlement. *See Jiffy Lube*, 927 F.2d at 159; *Flinn*, 528 F.2d at 1173. Each of the Settling Parties has independently considered the Settlement and each agrees that it is in the best interests of Lumber Liquidators and its stockholders. Finally, the assistance of a neutral, well-respected mediator, Judge Weinstein, also assured a sound result for Lumber Liquidators and its stockholders.

Additionally, the separately negotiated attorneys' fee provision is reasonable. In recognition of the substantial benefits conferred upon Lumber Liquidators, the Lumber Liquidators' Board has agreed to pay $5 million for Plaintiffs' Counsel's attorneys' fees and expenses. *See* Stipulation, ¶6.1.

The United States Supreme Court has endorsed this type of consensual resolution of attorneys' fees issues as the ideal toward which litigants should strive. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."). Applying these principles to derivative settlements, federal courts within the Eastern District of Virginia (and elsewhere) have approved separately negotiated attorneys' fees provisions and deferred to corporate directors' business judgment as to the amount of attorneys' fees to be paid to plaintiffs' counsel based upon the substantial benefits conferred upon the corporation. *See, e.g., In re Family Dollar, Inc., S'holder*

*Derivative Litig.*, No. 3:06-CV-00510(W), Order and Final Judgment, slip op., ¶¶3, 13 (W.D.N.C. Aug. 13, 2007) (approving attorneys' fee and expense provision separately negotiated among the parties) (attached as Exhibit 1 to the accompanying Declaration of Benny C. Goodman III ("Goodman Decl.")); *In re Finisar Corp. Derivative Litig.*, No. C-06-07660-RMW-HRL, Order Approving Derivative Settlement and Order of Dismissal with Prejudice, slip op., ¶¶5, 9 (N.D. Cal. Oct. 28, 2013) (approving attorneys' fee provision separately negotiated by independent directors) (Goodman Decl., Ex. 2); *In re Marvell Tech. Grp. Ltd. Derivative Litig.*, No. C-06-03894-RMW(RS), Final Judgment and Order of Dismissal with Prejudice, slip op., ¶¶5, 8 (N.D. Cal. Aug. 11, 2009) (same) (Goodman Decl., Ex. 3); *In re F5 Networks, Inc. Derivative Litig.*, No. C06-794 RSL, Order and Final Judgment, slip op., ¶¶5, 8 (W.D. Wash. Jan. 6, 2011) (same) (Goodman Decl., Ex. 4).  Moreover, where there is no evidence of collusion and no detriment to the parties, the court should give "substantial weight to a negotiated fee amount." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001).

Here, Plaintiffs' Counsel and Lumber Liquidators agreed to the attorneys' fees and expenses to be paid to Plaintiffs' Counsel after the principal terms of the Settlement were agreed upon. Moreover, Judge Weinstein oversaw these arm's-length negotiations, which resulted in a fee and expense provision that is within the range of agreed fees paid in other derivative cases.

Based upon the foregoing, the Settling Parties respectfully submit that preliminary approval of the Settlement should be granted and the Notice Order signed.

## V.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Settling Parties request that the Court establish dates by which notice of the Settlement will be distributed to Lumber Liquidators stockholders, dates by which Lumber Liquidators stockholders may comment on the Settlement, and a Settlement Hearing.  As set forth in the Notice Order, submitted herewith, the Settling Parties propose the following:

1148449_6

| | |
|---|---|
| Short-Form Notice of Proposed Derivative Settlement published in *Investor's Business Daily* ("Notice Date") | 5 business days after Court enters the Notice Order preliminarily approving the Settlement |
| Filing of the Stipulation and Notice of Proposed Derivative Settlement along with a Form 8-K with the SEC, and posting to the Company's website | 5 business days after Court enters the Notice Order preliminarily approving the Settlement |
| Filing of Motion for Final Approval of Derivative Settlement | 35 calendar days before the Settlement Hearing |
| Last day for Lumber Liquidators stockholders to comment on the Settlement | 21 calendar days before the Settlement Hearing |
| Filing of Reply for Final Approval of Derivative Settlement | 7 calendar days before the Settlement Hearing |
| Lumber Liquidators' Counsel shall file with the Court and serve on Plaintiffs' Counsel proof, by affidavit or declaration, of the dissemination of Notice | 35 calendar days before the Settlement Hearing |

In addition, the Settling Parties propose that the Settlement Hearing be scheduled on November 17, 2016. This time period will provide Lumber Liquidators stockholders adequate time to consider the Settlement. The Settlement Hearing date can be inserted in paragraph 2 of the Notice Order by the Court. This schedule is similar to those used in other derivative settlements and provides due process to Lumber Liquidators stockholders with respect to their rights concerning the Settlement. *See, e.g., In re Finisar Corp. Derivative Litig.*, No. C-06-07660-RMW-HRL, slip op. (N.D. Cal. Aug. 15, 2013); *In re Google Inc. S'holder Derivative Litig.*, No. CV-11-04248-PJH, slip op. (N.D. Cal. Nov. 6, 2014); *City of Westland Police & Fire Ret. Sys. v. Stumpf, et al.*, No. 3:11-cv-02369-SI, slip op. (N.D. Cal. May 12, 2014); *In re Eclipsys Corp. Derivative Litig.*, No. 07-80611-CIV-MIDDLEBROOKS, slip op. (S.D. Fla. June 12, 2008); *In re Fossil, Inc. Derivative Litig.*, No. 3:06-cv-01672-F, slip op. (N.D. Tex. May 10, 2011); *In re MRV Comm'ns, Inc. Derivative Litig.*, No. 1:08-cv-03800-GAF (MANx), slip op. (C.D. Cal. Apr. 8, 2013); *In re F5 Networks, Inc. Derivative Litig.*, No. C-06-0794-RSL, slip op. (W.D. Wash. Oct. 21, 2010); *In re First Am. Corp. S'holder Derivative Litig.*, No. SACV-06-1230-JVS (RNBx), slip op. (C.D. Cal. Sept. 30, 2008); *In*

*re Abbott-Depakote S'holder Derivative Litig.*, No. 1:11-cv-08114, slip op. (N.D. Ill. Mar. 18, 2014).

Goodman Decl., Exs. 5-13.

## VI.    CONCLUSION

The Settlement achieved is an excellent result for Lumber Liquidators in a case of substantial

complexity and cost, and accordingly, Plaintiffs respectfully submit that the Settlement is within the

range of approval and should be preliminarily approved.

DATED:  July 19, 2016                                  Respectfully submitted,


                                                            *s/ Brett A. Spain*
                                                Brett A. Spain (VSB No. 44567)
                                                Counsel for Amalgamated Bank, as Trustee
                                                for the Longview 600 Small Cap Index Fund,
                                                Derivatively on behalf of Lumber
                                                Liquidators Holdings, Inc.
                                                WILLCOX & SAVAGE, P.C.
                                                440 Monticello Avenue, Suite 2200
                                                Norfolk, Virginia  23510
                                                Telephone: (757) 628-5500
                                                Facsimile: (757) 628-5569
                                                bspain@wilsav.com

                                                Darren J. Robbins
                                                Benny C. Goodman III (admitted *pro hac vice*)
                                                Erik W. Luedeke (admitted *pro hac vice*)
                                                ROBBINS GELLER RUDMAN
                                                   & DOWD LLP
                                                655 West Broadway, Suite 1900
                                                San Diego, CA  92101
                                                Telephone:  619/231-1058
                                                Facsimile 619/231-7423
                                                darrenr@rgrdlaw.com
                                                bennyg@rgrdlaw.com
                                                eluedeke@rgrdlaw.com

                                                Attorneys for Plaintiffs

1148449_6

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of July, 2016, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record.

*Counsel for R. Andre Klein, Phuc Doan,*
*Derivatively on Behalf of Lumber Liquidators, Inc.*
 David W. Thomas
 Edward Kyle McNew
 MICHIEHAMLETT
 500 Court Square, Ste. 300
 P. O. Box 298
 Charlottesville, Virginia 22902
 (202) 973-8800 Telephone
 (202) 973-8899 Facsimile
 dthomas@michiehamlett.com
 kmcnew@michiehamlett.com

 Francis Alexander Bottini, Jr.
 Yury Alexandrovich Kolesnikov
 BOTTINI & BOTTINI, INC.
 7817 Ivanhoe Ave., Ste. 102
 LaJolla, California 92037
 (858) 914-2001 Telephone
 (858) 914-2001 Facsimile
 fbottini@bottinilaw.com
 ykolesnikov@bottinilaw.com

*Counsel for Phuc Doan*
 Michael Ira Fistel, Jr.
 JOHNSON & WEAVER, LLP
 40 Powder Springs Street
 Marietta, Georgia  30064
 (770) 200-3104 Telephone
 (770) 200-3101 Facsimile
 michaelf@johnsonandweaver.com

*Counsel for Defendant and Nominal Defendant Lumber Liquidators*
*Holdings, Inc., Macon F. Brock, Jr., Douglas T. Moore, John M. Presley,*
*Peter B. Robinson, Martin F. Roper, Thomas D. Sullivan, Jimmie L. Wade,*
*Nancy M. Taylor and Jeffrey W. Griffiths*
 Lyle Roberts (VSB No. 45808)
 COOLEY LLP (DC)
 1299 Pennsylvania Ave., NW, Suite 700
 Washington, DC 20004-2400
 (202) 842-7855 Telephone

(202) 842-7899 Facsimile
lroberts@cooley.com

*Counsel for Martin F. Roper, Nancy M. Taylor and Jimmie L. Wade*
*in their capacities as members of the Demand Review Committee*
    Matthew D. Foster (VSB No. 72130)
    PEPPER HAMILTON LLP
    600 14th St., N.W., Ste. 600
    Washington, D.C. 20005
    (202) 220-1230 Telephone
    (202) 220-1665 Facsimile
    fosterm@pepperlaw.com

    Laurence Z. Shiekman
    Robin P. Sumner
    Lindsay D. Breedlove
    PEPPER HAMILTON LLP
    3000 Two Logan Square
    Eighteenth and Arch Streets
    Philadelphia, Pennsylvania 19103
    (215) 981-4000 Telephone
    (215) 981-4750 Facsimile
    shiekmal@pepperlaw.com
    sumnerr@pepperlaw.com
    breedlovel@pepperlaw.com

*Counsel for Thomas D. Sullivan*
    Brian L. Whisler (VSB No. 30435)
    BAKER & MCKENZIE LLP
    815 Connecticut Ave., NW
    Washington, D.C. 20006
    (202) 452-7019 Telephone
    (202) 416-6937 Facsimile
    brian.whisler@bakermckenzie.com

*Counsel for William K. Schlegel*
    Elizabeth Solander (VSB No. 73335)
    John Frederick Wood
    Kevin Tod Abikoff
    HUGHES HUBBARD & REED LLP
    1775 I Street, N.W., Ste. 600
    Washington, D.C.  20006-2401
    (202) 721-4600 Telephone
    (202) 721-4646 Facsimile
    solander@hugheshubbard.com
    john.wood@hugheshubbard.com

kevin.abikoff@hugheshubbard.com

*Counsel for Carl R. Daniels, Jr.*
Ky E. Booth Kirby (VSB No. 25353)
MORGAN LEWIS & BOCKIUS LLP
2020 K Street, NW
Washington, D.C. 20006
(202) 373-6000 Telephone
(202) 373-6001 Facsimile
Ky.kirby@morganlewis.com

Dallas J.E. Kaplan (VSB No. 80537)
MORGAN LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 739-3000 Telephone
(202) 739-3001 Facsimile
dkaplan@morganlewis.com

Marc Jay Sonnenfeld
Laura Hughes McNally
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103
(215) 963-5000 Telephone
(215) 963-5001 Facsimile
msonnenfeld@morganlewis.com
lmcnally@morganlewis.com

*Counsel for Daniel E. Terrell*
Jonathan Tuttle (VSB No. 34465)
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Ave., N.W., # 500
Washington, D.C.  20004
(202) 383-8000 Telephone
(202) 383-8118 Facsimile
jrtuttle@debevoise.com

Ada Fernandez Johnson (VSB No. 42751)
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Ave. N.W., #500
Washington, D.C.  20004
(202) 383-8036 Telephone
(202) 383-8118 Facsimile
afjohnson@debevoise.com

*Counsel for Robert M. Lynch*

Connie N. Bertram (VSB No. 31713)
Ann Marie Ashton
Ralph C. Ferrara
PROSKAUER ROSE LLP
1001 Pennsylvania Ave. NW, Ste. 600 South
Washington, D.C.  20004
(202) 416-6800 Telephone
(202) 416-6899 Facsimile
cbertram@proskauer.com
aashton@proskauer.com
rferrara@proskauer.com

Jonathan E. Richman
PROSKAUER ROSE LLP
11 Times Square
New York, New York 10036
(212) 969-3448 Telephone
(212) 969-2900 Facsimile
jerichman@proskauer.com

_____/s/_____
Brett A. Spain (VSB No. 44567)
Counsel for Amalgamated Bank, as Trustee
for the Longview 600 Small Cap Index Fund,
Derivatively on behalf of Lumber
Liquidators Holdings, Inc.
WILLCOX & SAVAGE, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia  23510
(757) 628-5500 Telephone
(757) 628-5566 Facsimile
bspain@wilsav.com

Benny C. Goodman, III
Erik W. Luedeke
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Ste. 1900
San Diego, California 92101
(619) 231-1058 Telephone
(619) 231-7423 Facsimile
bennyg@rgrdlaw.com
eluedeke@rgrdlaw.com

Ekaterini M Polychronopoulos
ROBBINS GELLER RUDMAN & DOWD LLP
Post Montgomery Center
One Montgomery Street, Ste. 1800
San Francisco, California 94104
(415) 288-4545 Telephone
(415) 288-4534 Facsimile
katerinap@rgrdlaw.com